Opinion
WERDEGAR, J.
Antelope Valley Newspapers, Inc. (Antelope Valley), is the publisher of the Antelope Valley Press, a daily newspaper. To deliver the *528 paper to its subscribers, Antelope Valley contracts with individual carriers. Four carriers, Maria Ayala, Josefina Briseño, Rosa Duran, and Osman Núñez, contend Antelope Valley illegally treats them as independent contractors, rather than employees, and thereby deprives them of a host of wage and hour protections to which they are legally entitled.
The merits of the complaint are not before us. The sole question is whether this case can proceed as a class action. The trial court concluded the case could not, holding that on the critical question whether Ayala and others were employees, plaintiffs had not shown common questions predominate; to determine employee status, in the trial court’s view, would necessitate numerous unmanageable individual inquiries into the extent to which each carrier was afforded discretion in his or her work. The Court of Appeal disagreed in part, holding that the trial court had misunderstood the nature of the inquiries called for, and remanded for reconsideration of the class certification motion as to five of the complaint’s claims.
We affirm. Whether a common law employer-employee relationship exists turns foremost on the degree of a hirer’s right to control how the end result is achieved. (S. G. Borello & Sons, Inc. v. Department of Industrial Relations (1989) 48 Cal.3d 341, 350 [256 Cal.Rptr. 543, 769 P.2d 399] (Borello)) In turn, whether the hirer’s right to control can be shown on a classwide basis will depend on the extent to which individual variations in the hirer’s rights vis-a-vis each putative class member exist, and whether such variations, if any, are manageable. Because the trial court principally rejected certification based not on differences in Antelope Valley’s right to exercise control, but on variations in how that right was exercised, its decision cannot stand.
Factual and Procedural Background
Defendant Antelope Valley circulates the Antelope Valley Press daily to subscribers throughout Los Angeles and Kern Counties. To distribute the paper, Antelope Valley operates distribution facilities in both counties and contracts with individual carriers using a preprinted, standard form contract. Named plaintiffs Maria Ayala, Josefina Briseño, Rosa Duran, and Osman Núñez (collectively Ayala) are or were newspaper carriers for Antelope Valley.
In December 2008, Ayala sued on behalf of a putative class of Antelope Valley carriers. The complaint contends that Antelope Valley treats its carriers as independent contractors when, as a matter of law, they are employees. Consequently, Antelope Valley denies its carriers various wage and hour protections to which they are entitled. The complaint alleges unpaid overtime, unlawful deductions, failure to provide breaks, and failure to reimburse for *529 business expenses, among other statutory and wage order violations (Lab. Code, §§221, 223, 226, 226.3, 226.7, 512, 1174, 1194, 2802; Industrial Welfare Com. wage order No. 1-2001, subds. 3, 7-9, 11-12 (IWC wage order No. 1-2001) (Cal. Code Regs., tit. 8, § 11010)), as well as unfair competition based on these violations (Bus. & Prof. Code, § 17200).
Ayala sought class certification. She contended the central question in establishing liability was whether carriers are employees, and that this question could be resolved through common proof, including but not limited to the contents of the standard contract entered into between Antelope Valley and its carriers. Antelope Valley opposed certification. Because of alleged individual variations in how carriers performed their work, it disagreed that the question of employee status could be resolved on a common basis. Antelope Valley further argued that even if the carriers were employees, some of the causes of action presented additional unmanageable individual issues that should nevertheless preclude certification.
The trial court denied class certification. It concluded common issues did not predominate because resolving the carriers’ employee status would require “heavily individualized inquiries” into Antelope Valley’s control over the carriers’ work. Moreover, the claims for overtime and for meal and rest breaks would require additional claim-specific individualized inquiries. Because individual issues predominated, class resolution of the claims was not superior to individual lawsuits by each carrier.
A unanimous Court of Appeal affirmed in part and reversed in part. It agreed with the trial court that Ayala had not shown how her overtime, meal break, and rest break claims could be managed on a classwide basis. As for the remaining claims, however, it disagreed that proof of employee status would necessarily entail a host of individual inquiries. In the Court of Appeal’s view, although evidence of variation in how carriers performed their work might support Antelope Valley’s position that it did not control the carriers’ work, such evidence would not convert the critical question — how much right does Antelope Valley have to control what its carriers do? — from a common one capable of answer on a classwide basis to an individual one requiring minitrials.
We granted Antelope Valley’s petition for review.
Discussion
I. Class Action Principles
“The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community *530 of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] ‘In turn, the “community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.” ’ ” (Brinker Restaurant Corp. v. Superior Court (2012) 53 Cal.4th 1004, 1021 [139 Cal.Rptr.3d 315, 273 P.3d 513] (Brinker).) Here, the presence or absence of predominant common questions is the sole issue on appeal.[1]
We review the trial court’s ruling for abuse of discretion and generally will not disturb it “ ‘unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.’ ” (Brinker, supra, 53 Cal.4th at p. 1022.) We review the trial court’s actual reasons for granting or denying certification; if they are erroneous, we must reverse, whether or not other reasons not relied upon might have supported the ruling. (Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 436 [97 Cal.Rptr.2d 179, 2 P.3d 27].)
II. The Test for Employee Status
We begin by identifying the principal legal issues and examining the substantive law that will govern. In doing so, we do not seek to resolve those issues. Rather, the question at this stage is whether the operative legal principles, as applied to the facts of the case, render the claims susceptible of resolution on a common basis. (Brinker, supra, 53 Cal.4th at pp. 1023-1025; Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319, 327 [17 Cal.Rptr.3d 906, 96 P.3d 194] [the focus “is on what type of questions— common or individual — are likely to arise in the action, rather than on the merits of the case”].)
The trial court and Court of Appeal correctly recognized as the central legal issue whether putative class members are employees for purposes of the provisions under which they sue. If they are employees, Antelope Valley owes them various duties that it may not have fulfilled; if they are not, no liability can attach. In turn, whether putative class members’ employee status can be commonly resolved hinges on the governing test for employment.
In deciding whether plaintiffs were employees or independent contractors, the trial court and Court of Appeal applied the common law test, discussed *531 most recently at length in Borello, supra, 48 Cal.3d 341. We solicited supplemental briefing concerning the possible relevance of the additional tests for employee status in IWC wage order No. 1-2001, subdivision 2(D)-(F). (See Martinez v. Combs (2010) 49 Cal.4th 35, 57-66 [109 Cal.Rptr.3d 514, 231 P.3d 259]; Bradley v. Networkers Internal, LLC (2012) 211 Cal.App.4th 1129, 1146-1147 [150 Cal.Rptr.3d 268]; Sotelo v. Medianews Group, Inc. (2012) 207 Cal.App.4th 639, 660-662 [143 Cal.Rptr.3d 293].) In light of the supplemental briefing, and because plaintiffs proceeded below on the sole basis that they are employees under the common law, we now conclude we may resolve the case by applying the common law test for employment, without considering these other tests. (Cf. Sav-On Drug Stores, Inc. v. Superior Court, supra, 34 Cal.4th at p. 327 [the class certification inquiry must focus on “whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment”].) Accordingly, we leave for another day the question of what application, if any, the wage order tests for employee status might have to wage and hour claims such as these, and confine ourselves to considering whether plaintiffs’ theory that they are employees under the common law definition is one susceptible of proof on a classwide basis.
Under the common law, “ ‘[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired ....’” (Borello, supra, 48 Cal.3d at p. 350, quoting Tieberg v. Unemployment Ins. App. Bd. (1970) 2 Cal.3d 943, 946 [88 Cal.Rptr. 175, 471 P.2d 975]; accord, Empire Star Mines Co. v. Cal. Emp. Com. (1946) 28 Cal.2d 33, 43 [168 P.2d 686].) What matters is whether the hirer “retains all necessary control” over its operations. (Borello, at p. 357.) “ ‘[T]he fact that a certain amount of freedom of action is inherent in the nature of the work does not change the character of the employment where the employer has general supervision and control over it.’ ” (Burlingham v. Gray (1943) 22 Cal.2d 87, 100 [137 P.2d 9]; see Toyota Motor Sales U.S.A., Inc. v. Superior Court (1990) 220 Cal.App.3d 864, 876 [269 Cal.Rptr. 647]; Grant v. Woods (1977) 71 Cal.App.3d 647, 653 [139 Cal.Rptr. 533].) Perhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because “[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent’s activities.” (Malloy v. Fong (1951) 37 Cal.2d 356, 370 [232 P.2d 241]; see Borello, at p. 350; Kowalski v. Shell Oil Co. (1979) 23 Cal.3d 168, 177 [151 Cal.Rptr. 671, 588 P.2d 811]; Isenberg v. California Emp. Stab. Com. (1947) 30 Cal.2d 34, 39 [180 P.2d 11]; Burlingham, at pp. 99-100.)[2]
*532 While the extent of the hirer’s right to control the work is the foremost consideration in assessing whether a common law employer-employee relationship exists, our precedents also recognize a range of secondary indicia drawn from the Second and Third Restatements of Agency that may in a given case evince an employment relationship. Courts may consider “(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.” (Borello, supra, 48 Cal.3d at p. 351; see, e.g., Tieberg v. Unemployment Ins. App. Bd., supra, 2 Cal.3d at pp. 949-950 & fn. 4; Empire Star Mines Co. v. Cal. Emp. Com., supra, 28 Cal.2d atpp. 43-44; Futrell v. Payday California, Inc. (2010) 190 Cal.App.4th 1419, 1434 [119 Cal.Rptr.3d 513]; Rest.3d Agency, § 7.07, com. f, pp. 210-211; Rest.2d Agency, § 220, subd. (2).)[3]
III. Predominance and Common Law Employee Status
A. Control
The trial court considered the various criteria relevant to certification, concluding the proposed class was sufficiently numerous and ascertainable and the class representatives had claims typical of the class and could adequately represent it. It further concluded, however, that common questions did not predominate; instead, “numerous individual inquiries” would be “required to determine whether carriers are member of the class,” and thus a class action was not a superior way of proceeding. This was so because the record demonstrated “heavily individualized inquiries [would be] required to conduct the ‘control test’ ” and decide the central question whether any given worker was an employee.
*533 As the parties and trial court correctly recognized, control over how a result is achieved lies at the heart of the common law test for employment. (Borello, supra, 48 Cal.3d at p. 350.) Indeed, absent a common (or individual, but manageable) means of assessing the degree of the hirer’s control, we doubt claims dependent on application of the common law test could be certified.
Significantly, what matters under the common law is not how much control a hirer exercises, but how much control the hirer retains the right to exercise. (Perguica v. Ind. Acc. Com., supra, 29 Cal.2d at pp. 859-860 [“The existence of such right of control, and not the extent of its exercise, gives rise to the employer-employee relationship.”]; Empire Star Mines Co. v. Cal. Emp. Com., supra, 28 Cal.2d at p. 43 [“If the employer has the authority to exercise complete control, whether or not that right is exercised with respect to all details, an employer-employee relationship exists.”]; Industrial Ind. Exch. v. Ind. Acc. Com. (1945) 26 Cal.2d 130, 135 [156 P.2d 926] [“The right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not, gives rise to the employment relationship.”]; S.A. Gerrard Co. v. Industrial Acc. Com. (1941) 17 Cal.2d 411, 414 [110 P.2d 377] [“the right to control, rather than the amount of control which was exercised, is the determinative factor”]; Hillen v. Industrial Acc. Com. (1926) 199 Cal. 577, 581-582 [250 R 570] [“It is not a question of interference, or non-interference, not a question of whether there have been suggestions, or even orders, as to the conduct of the work; but a question of the right to act, as distinguished from the act itself or the failure to act.”].) Whether a right of control exists may be measured by asking “ ‘ “whether or not, if instructions were given, they would have to be obeyed” ’ ” on pain of at-will “ ‘ “discharge!] for disobedience.” ’ ” (Toyota Motor Sales U.S.A., Inc. v. Superior Court, supra, 220 Cal.App.3d at p. 875.)
A court evaluating predominance “must determine whether the elements necessary to establish liability [(here, employee status)] are susceptible of common proof or, if not, whether there are ways to manage effectively proof of any elements that may require individualized evidence.” (Brinker, supra, 53 Cal.4th at p. 1024.) Consequently, at the certification stage, the relevant inquiry is not what degree of control Antelope Valley retained over the manner and means of its papers’ delivery. It is, instead, a question one step further removed: Is Antelope Valley’s right of control over its carriers, whether great or small, sufficiently uniform to permit classwide assessment? That is, is there a common way to show Antelope Valley possessed essentially the same legal right of control with respect to each of its carriers? Alternatively, did its rights vary substantially, such that it might subject some carriers to extensive control as to how they delivered, subject to firing at will, *534 while as to others it had few rights and could not have directed their manner of delivery even had it wanted, with no common proof able to capture these differences?
The trial court lost sight of this question. Its order reveals the denial of certification ultimately rested on two related determinations: (1) the record reflected considerable variation in the degree to which Antelope Valley exercised control over its carrier, and (2) the putative class as a whole was not subject to pervasive control as to the manner and means of delivering papers. Neither of these considerations resolves the relevant inquiry. Whether Antelope Valley varied in how it exercised control does not answer whether there were variations in its underlying right to exercise that control that could not be managed by the trial court. Likewise, the scope of Antelope Valley’s right to control the work does not in itself determine whether that right is amenable to common proof.
We discuss first the relationship between the right of control and the exercise of that control. The carriers’ relationship with Antelope Valley was governed by a form contract; Antelope Valley stipulated that during the relevant period two such contracts were in use. Self-evidently, “[s]uch agreements are a significant factor for consideration” in assessing a hirer’s right to control a hiree’s work. (Tieberg v. Unemployment Ins. App. Bd., supra, 2 Cal.3d at p. 952; see Rest.2d Agency, § 220, subd. (2)(a) [what matters is “the extent of control which, by the agreement, the master may exercise over the details of the work” (italics added)]; Dalton v. Lee Publications (S.D.Cal. 2010) 270 F.R.D. 555, 563 [“The primary factor, the right to control, is also susceptible to common proof. This is because the rights and obligations of the class members and Defendant are set forth in two sets of substantially identical contracts.”]; Norris-Wilson v. Delta-T Group, Inc. (S.D.Cal. 2010) 270 F.R.D. 596, 608 [same].)
At the certification stage, the importance of a form contract is not in what it says, but that the degree of control it spells out is uniform across the class. Here, for example, the two form contracts address, similarly for all carriers, the extent of Antelope Valley’s control over what is to be delivered, when, and how, as well as Antelope Valley’s right to terminate the contract without cause on 30 days’ notice.
The trial court here afforded only cursory attention to the parties’ written contract, instead concentrating on the particulars of the parties’ many declarations and detailing a dozen or so ways in which delivery practices, or Antelope Valley’s exercise of control over those practices, varied from carrier to carrier — e.g., whether carriers were instructed on how to fold papers, whether they bagged or “rubber banded” papers, and whether they followed *535 the delivery order on their route lists. In so doing, the court focused on the wrong legal question — whether and to what extent Antelope Valley exercised control over delivery. But what matters is whether a hirer has the “legal right to control the activities of the alleged agent” (Malloy v. Fong, supra, 37 Cal.2d at p. 370, italics added) and, more specifically, whether the extent of such legal right is commonly provable. In cases where there is a written contract, to answer that question without full examination of the contract will be virtually impossible. (See Tieberg v. Unemployment Ins. App. Bd., supra, 2 Cal.3d at p. 952 [written agreements are a “significant factor” in assessing the right to control]; Grant v. Woods, supra, 71 Cal.App.3d at p. 653 [“Written agreements are of probative significance” in evaluating the extent of a hirer’s right to control].) Evidence of variations in how work is done may indicate a hirer has not exercised control over those aspects of a task, but they cannot alone differentiate between cases where the omission arises because the hirer concludes control is unnecessary and those where the omission is due to the hirer’s lack of the retained right. That a hirer chooses not to wield power does not prove it lacks power. (Malloy, at p. 370 [“It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent. The existence of the right of control and supervision establishes the existence of an agency relationship.”]; Robinson v. George (1940) 16 Cal.2d 238, 244 [105 P.2d 914] [absence of evidence a hirer “exercised any particular control over the details” of the work does not show the hirer lacked the right to do so].) One must consider the contract as well.
This is not to say the parties’ course of conduct is irrelevant. While any written contract is a necessary starting point, Tieberg recognizes the rights spelled out in a contract may not be conclusive if other evidence demonstrates a practical allocation of rights at odds with the written terms. (Tieberg v. Unemployment Ins. App. Bd., supra, 2 Cal.3d at p. 952.) In deciding whether claims that hinge on common law employee status are certifiable, then, a court appropriately may consider what control is “necessary” given the nature of the work (Borello, supra, 48 Cal.3d at p. 357, italics omitted), whether evidence of the parties’ course of conduct will be required to evaluate whether such control was retained, and whether that course of conduct is susceptible of common proof — i.e., whether evidence of the parties’ conduct indicates similar retained rights vis-a-vis each hiree, or suggests variable rights, such that individual proof would need to be managed.
Relatedly, the existence of variations in the extent to which a hirer exercises control does not necessarily show variation in the extent to which the hirer possesses a right of control, or that the trial court would find any such variation unmanageable. That a hirer may monitor one hiree closely and another less so, or enforce unevenly a contractual right to dictate the containers in which its product is delivered, does not necessarily demonstrate *536 that the hirer could not, if it chose, monitor or control the work of all its hirees equally. (See Estrada v. FedEx Ground Package System, Inc. (2007) 154 Cal.App.4th 1, 13-14 [64 Cal.Rptr.3d 327] [recognizing that how a hirer exercised control over a particular hiree might show, not the hirer’s differential control of that hiree, but the extent of its common right to control all its hirees].) For class certification under the common law test, the key question is whether there is evidence a hirer possessed different rights to control with regard to its various hirees, such that individual minitrials would be required. Did Antelope Valley, notwithstanding the form contract it entered with all carriers, actually have different rights with respect to each that would necessitate minitrials?
With one exception, the trial court considered only variations in the actual exercise of control[4] and, by finding such variations sufficient to defeat certification, erroneously treated them as the legal equivalent of variations in the right to control. Indeed, in places the trial court found Antelope Valley had a uniform right of control, or uniform lack of right, but notwithstanding these uniformities immediately thereafter considered as probative variations in carrier practices, or in Antelope Valley’s exercise of its rights. For example, the trial court concluded, citing the form contract, that Antelope Valley uniformly did not require carriers to purchase rubber bands or bags exclusively from it, but then noted some carriers did and some did not, a variation that shed no light on the relevant inquiry. Similarly, the trial court concluded Antelope Valley had a contractual right to impose complaint charges, but then focused on individual variations in how Antelope Valley exercised that undisputed right against different carriers.
We next discuss the relationship between the right of control and the issue for certification purposes, variation in that right. After identifying various differences in how carriers delivered papers, the trial court concluded “the putative class of [Antelope Valley] newspaper carriers was not subject to the ‘pervasive and significant control’ [of Antelope Valley] over the means and manner by which they performed their work.” Consequently, the court held, “[t]he evidence before the Court demonstrates that there is no commonality regarding the right to control.” The conclusion does not follow from the premise; indeed, as we discuss, the conclusion is a contradiction of the premise.
Preliminarily, whether the court’s premise (that carriers are not subject to pervasive control) is intended to reflect a finding about the limits of Antelope Valley’s right to control its carriers’ work or, like much of the court’s *537 preceding discussion, only a finding about the limited exercise of such rights, is uncertain. To the extent the finding relates to the exercise of rights, as it appears to, it is problematic for all the reasons just discussed. But even assuming for present purposes the finding concerns the scope of Antelope Valley’s legal rights, it does not support denial of class certification.
The extent of Antelope Valley’s legal right of control is a point of considerable dispute; indeed, it is likely the crux of the case’s merits. To address such an issue on a motion for class certification is not necessarily erroneous. We recently reaffirmed that a court deciding a certification motion can resolve legal or factual disputes: “To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them.” (Brinker, supra, 53 Cal.4th at p. 1025; see Dailey v. Sears, Roebuck & Co. (2013) 214 Cal.App.4th 974, 990-991 [154 Cal.Rptr.3d 480].) But we cautioned that such an inquiry generally should occur only when “necessary.” (Brinker, at p. 1025.) The key to deciding whether a merits resolution is permitted, then, is whether certification “depends upon” the disputed issue. (Ibid.)
Certification of class claims based on the misclassification of common law employees as independent contractors generally does not depend upon deciding the actual scope of a hirer’s right of control over its hirees. The relevant question is whether the scope of the right of control, whatever it might be, is susceptible of classwide proof. Bypassing that question, the trial court instead proceeded to the merits.[5] In so doing, the court made the same mistake others have when deciding whether to certify claims predicated on common law employee status, “focus[ing] too much on the substantive issue of the defendant’s right to control its newspaper deliverers, instead of whether that question could be decided using common proof.” (Dalton v. Lee Publications, supra, 270 F.R.D. at p. 564.) Moreover, by purporting to resolve on a classwide basis the scope of Antelope Valley’s right to control its carriers, the trial court contradicted its own conclusion, that classwide assessment of Antelope Valley’s right to control is infeasible.
The difficulties with the court’s ruling on class certification thus lie not in the answers given, but the questions asked. A certification decision is reviewed for abuse of discretion, but when the supporting reasoning reveals the court based its decision on erroneous legal assumptions about the relevant questions, that decision cannot stand. (Brinker, supra, 53 Cal.4th at p. 1022; Fireside Bank v. Superior Court (2007) 40 Cal.4th 1069, 1089 [56 Cal.Rptr.3d 861, 155 P.3d 268]; Linder v. Thrifty Oil Co., supra, 23 Cal.4th at *538 pp. 435-436.) The trial court denied certification both because of individual variations in whether Antelope Valley exercised control and because control was not pervasive, rather than asking whether Antelope Valley’s underlying right of control was subject to variations that would defy classwide proof and prove unmanageable. That some other analytical path might, on this record, support the same disposition matters not; because the reasons given are unsound, the ruling must be reversed. (Linder, at p. 436.) In such a case, the preferred course is to remand for the trial court to reconsider class certification under the correct legal standards. (Id. at pp. 448-449.)
B. Secondary Factors
After concluding variations in control precluded class certification, the trial court noted as well individual variations in a handful of the secondary factors that supplement the central inquiry into the right of control (see Borello, supra, 48 Cal.3d at pp. 350-351; Tieberg v. Unemployment Ins. App. Bd., supra, 2 Cal.3d at p. 950 & fn. 4), including whether carriers are engaged in a distinct occupation or business; their instrumentalities, tools, and place of work; and the length of time for which services are to be performed. Because the Court of Appeal addressed these factors’ role, the parties have briefed their application at length, and they may affect class certification on remand, we briefly discuss the interplay between the secondary factors and the predominance inquiry.
Preliminarily, we caution that courts assessing these secondary factors should take care to correctly identify the relevant considerations. Here, for example, the trial court noted variation in the “place of work.” The inquiry that sheds light on a hiree’s common law employee status, however, is into who provides the place of work, the hirer or hiree (Borello, supra, 48 Cal.3d at p. 351; Rest.3d Agency, §7.07, com. f, p. 211; Rest.2d Agency, § 220, subd. (2)(e)), and thus the relevant inquiry is whether there is variation in who provides facilities. That carriers could pick up papers at any of several Antelope Valley warehouses or drop locations, as Antelope Valley argued, does not show variation in the underlying secondary factor.
In evaluating how a given secondary factor may affect class certification, a court must identify whether the factor will require individual inquiries or can be assessed on a classwide basis. In a case where every class member performs the same tasks, some factors will always be common, such as the kind of occupation and the skill it requires. (Borello, supra, 48 Cal.3d at p. 351.) Other factors that might on their face seem to turn solely on the peculiarities of the parties’ particular arrangement, the Restatement intended to depend as well on general custom with respect to the nature of the work: “It is not determinative that the parties believe or disbelieve that the relation *539 of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other. However, community custom in thinking that a kind of service, such as household service, is rendered by servants, is of importance.” (Rest.2d Agency, § 220, com. m, p. 492; see also id., com. i, p. 489 [“The custom of the community as to the control ordinarily exercised in a particular occupation is of importance.”].) Depending on the record, still other factors may vary from hiree to hiree. (See Sotelo v. Medianews Group, Inc., supra, 207 Cal.App.4th at pp. 657-658.)
Once common and individual factors have been identified, the predominance inquiry calls for weighing costs and benefits. “The ‘ultimate question’ the element of predominance presents is whether ‘the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.’ ” (Brinker, supra, 53 Cal.4th at p. 1021.) “Individual issues do not render class certification inappropriate so long as such issues may effectively be managed.” (Sav-On Drug Stores, Inc. v. Superior Court, supra, 34 Cal.4th at p. 334; accord, Duran v. U.S. Bank National Assn. (2014) 59 Cal.4th 1, 29 [172 Cal.Rptr.3d 371, 325 P.3d 916].)
When the issue of common law employment is involved, that weighing must be conducted with an eye to the reality that the considerations in the multifactor test are not of uniform significance. Some, such as the hirer’s right to fire at will and the basic level of skill called for by the job, are often of inordinate importance. (See Burlingham v. Gray, supra, 22 Cal.2d at p. 100 [“ ‘Perhaps no single circumstance is more conclusive to show the relationship of an employee than the right of the employer to end the service whenever he sees fit to do so.’ ”]; Rest.2d Agency, § 220, com. i, p. 489 [the hirer’s right of control, “together with the skill which is required in the occupation, is often of almost conclusive weight”].) Others, such as the “ownership of the instrumentalities and tools” of the job, may be of “only evidential value,” relevant to support an inference that the hiree is, or is not, subject to the hirer’s direction and control. (Rest.2d Agency, § 220, com. k, pp. 490, 491; see Tieberg v. Unemployment Ins. App. Bd., supra, 2 Cal.3d at p. 953 [many secondary factors “are mer[e]ly evidentiary indicia of the right to control” and may be of “minute consequence” when independent evidence clearly establishes that right].) Moreover, the significance of any one factor and its role in the overall calculus may vary from case to case depending on the nature of the work and the evidence. (Borello, supra, 48 Cal.3d at p. 354.)
Accordingly, the impact of individual variations on certification will depend on the significance of the factor they affect. Some may be of no *540 consequence if they involve minor parts of the overall calculus and common proof is available of key factors such as control, the skill involved, and the right to terminate at will; conversely, other variations, if they undermine the ability to prove on a common basis the most significant factor or factors in a case, may render trial unmanageable even where other factors are common. The proper course, if there are individual variations in parts of the common law test, is to consider whether they are likely to prove material (see Bradley v. Networkers Internal, LLC, supra, 211 Cal.App.4th at p. 1147 [variations do not defeat certification where they are insufficiently significant to the overall inquiry]; Dalton v. Lee Publications, supra, 270 F.R.D. at pp. 562-563 [same]; Norris-Wilson v. Delta-T Group, Inc., supra, 270 F.R.D. at p. 608 [same]), and, if material, whether they can be managed (Brinker, supra, 53 Cal.4th at p. 1024).
Here, the trial court simply recited secondary factor variations it found without doing the necessary weighing or considering materiality. This was understandable, as the court had already determined substantial variations in control existed, a determination that, had it been sound, would have been sufficient to justify denying class certification and thus obviated any need for further inquiry. On remand, any consideration of common and individual questions arising from the secondary factors should take into account the likely materiality of matters subject to common or individual proof.
Disposition
We affirm the Court of Appeal’s judgment and remand for further proceedings not inconsistent with this opinion.
Cantil-Sakauye, C. J., Corrigan, J., Liu, J., and Kennard, J.,* concurred.

 While the trial court also concluded class treatment was not superior to other means of resolving the complaint’s claims, that determination was wholly derivative of its conclusion that individual questions of fact and law would predominate over common ones. Our opinion therefore focuses on the trial court’s predominance analysis.

 The worker’s corresponding right to leave is similarly relevant: “ ‘An employee may quit, but an independent contractor is legally obligated to complete his contract.’ ” (Perguica v. Ind. Acc. Com. (1947) 29 Cal.2d 857, 860 [179 P.2d 812].)

 As Justice Chin’s concurrence notes, Borello recognized “the concept of ‘employment’ embodied in the [Workers’ Compensation] Act is not inherently limited by common law principles” (Borello, supra, 48 Cal.3d at p. 351) and identified a handful of other considerations that might “overlap those pertinent under the common law” (id. at p. 354; see id. at pp. 351-355 [discussing additional considerations relevant in light of the remedial purposes of the statutory scheme there at issue]). Strictly speaking, however, those further considerations are not part of the common law test for employee status. The concurrence’s assertion they are relevant here (cone. opn. of Chin, J., post, at pp. 548-550) rests on the legal assumption they play a role in deciding employee status' for wage claims, an assumption we decline to embrace, leaving for another day resolution of its validity. (See Martinez v. Combs, supra, 49 Cal.4th at pp. 64, 73.)

 The exception: As the trial court’s order notes, one of the two exemplars of the form contract used during the class period requires carriers to pick up papers from the designated location no later than 3:00 a.m. The other has no similar deadline.

 Assuming again one were to treat the trial court’s absence-of-control determination as speaking to the absence of a sufficient right to control, and not merely to an absence of the exercise of control.

Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.