Filed 12/15/14  Salazar v. Victory Entertainment CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STACY SALAZAR, | B249888 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC445154) |
| v. | |
| VICTORY ENTERTAINMENT, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jane L. Johnson, Judge.  Reversed and remanded.

Murray M. Sinclair & Associates, Murray M. Sinclair, Ryan C. McKim; Manuwal & Manuwal, Robert I. Manuwal; Cohon & Pollack and Jeffrey M. Cohon, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

_____

Stacy Salazar, an exotic dancer, sued Victory Entertainment, Inc. (doing business as VIP Showgirls) (VIP), an adult entertainment club in North Hollywood, alleging wage and hour violations arising from the club's misclassification of dancers who performed at the club as independent contractors. Salazar appeals from the trial court's order denying her motion to certify a class of all dancers who have worked at VIP; the court ruled common issues did not predominate over individual issues. We reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

Salazar filed a class action complaint against VIP in September 2010 alleging causes of action for illegal wage deductions; conversion (illegal tip collection); failure to provide uniforms, itemized wage statements, rest periods and meal breaks; and unfair business practices. She sought declaratory and injunctive relief, damages in the form of restitution and reimbursement, penalties, punitive damages and attorney fees. VIP filed a general denial to the complaint and asserted multiple affirmative defenses, including the allegation the dancers were independent contractors.

In November 2012 Salazar moved to certify a class of "[a]ll persons who are employed or have been employed and who have worked one or more shifts as a 'dancer' for [VIP] in the State of California from four (4) years prior to the filing of this action until the present." In a declaration submitted in support of her motion to certify, Salazar stated her job required her to dance on stage and to sell private dances while other dancers performed. She was not paid a wage; she received tips and a portion of the money customers spent on private dances. As a prerequisite to performing on stage, she paid a $30 fee, which was deducted from the money due at the end of a shift. Each shift she was also required to tip the manager, bartender and DJ a percentage of her earnings (5 to 10% each). To enforce tip sharing, management personnel confiscated her car keys when she checked into her shift and did not return them until she "tip[ped] out" at the end of the shift. The club controlled her schedule and required her to work some week nights in order to be scheduled for a weekend shift. She understood she was required to show up and would have been punished if she missed a shift. She was required to wear bikini dance wear, high heels and underwear that she provided herself without reimbursement.

2

She was not given any breaks and was not allowed to eat during her shift. VIP treated her as if she were an independent contractor and did not pay payroll taxes, state unemployment and disability insurance or workers' compensation insurance on her behalf.

VIP did not timely oppose the motion to certify the class. In considering the motion, however, the trial court noted evidence in the record suggested VIP had dancers sign a standard agreement to work at the club that identified them as independent contractors. The agreement provided either party could terminate the agreement at will.

Notwithstanding the lack of opposition to the motion, the trial court concluded Salazar had failed to carry her burden of demonstrating class certification was proper. In particular, the court applied the common law test for whether an employee relationship existed between Salazar and VIP (see *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 531-532 (*Ayala*)) and found the evidence raised disputed issues about the dancers' relationships with VIP that would require individual inquiries at trial. Because Salazar's motion failed to establish that common issues predominated over individual issues, the motion was denied. Salazar's motion for reconsideration based on evidence VIP had lied in stating dancers had been required to execute independent contractor agreements was denied.

## DISCUSSION

### 1. *Standard of Review*

To prevail on a motion to certify a class, "[t]he party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."'" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021; accord, *Ayala, supra,* 59 Cal.4th at pp. 529-530; *Dynamex Operations West, Inc. v. Superior Court* (2014)

3

230 Cal.App.4th 718, 725 (*Dynamex*).) "'The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious."'" (*Brinker*, at p. 1023.) Nonetheless, "a court may 'consider[] how various claims and defenses relate and may affect the course of the litigation' even though such 'considerations . . . may overlap the case's merits.'" (*Id.* at p. 1024.)

We review a trial court's ruling on a certification motion for abuse of discretion and generally will not disturb it "'"unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions."'" (*Ayala, supra,* 59 Cal.4th at p. 530; see *Harper v. 24 Hour Fitness, Inc.* (2008) 167 Cal.App.4th 966, 973-974.) "We review the trial court's actual reasons for granting or denying certification; if they are erroneous, we must reverse, whether or not other reasons not relied upon might have supported the ruling." (*Ayala*, at p. 530.)

   2. *The Trial Court Erred by Applying the Common Law Test for an Employee Relationship to Claims Falling Within the Scope of a Wage Order*

In *Dynamex, supra,* 230 Cal.App.4th 718 we considered whether delivery drivers engaged by Dynamex had been misclassified as independent contractors for purposes of their wage and hour claims. We concluded the superior court had correctly allowed the drivers to rely on the Industrial Welfare Commission (IWC) definition of an employment relationship for purposes of those claims falling within the scope of an IWC wage order. (*Dynamex,* at p. 734; see *Martinez v. Combs* (2010) 49 Cal.4th 35, 64 (*Martinez*); Cal. Code Regs., tit. 8, §§ 11000-11170.)[1] With respect to those claims falling outside

---

[1]   The IWC is the state agency empowered to regulate wages, hours and working conditions through wage orders governing specific industries and occupations. (See *Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1027; *Ramirez v. Yosemite Water Co., Inc.* (1999) 20 Cal.4th 785, 795.) There are currently 18 wage orders. Sixteen relate to specific industries or occupations: manufacturing; personal service; canning, freezing and preserving; professional, technical, clerical, mechanical and the like; public housekeeping; laundry, linen supply and dry cleaning; mercantile; product handling after harvest (covering commercial packing sheds); transportation; amusement and recreation; broadcasting; motion picture; preparation of agricultural products for market (on the farm); agricultural; household; and construction, drilling, logging and mining. There is also one general minimum wage order, and one order

4

the scope of a relevant wage order, however, we concluded the common law test for an employment relationship applies. (*Dynamex,* at p. 734; see *Ayala, supra,* 59 Cal.4th at pp. 531-532; *S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350 (*Borello*).)

As in *Ayala* and *Dynamex,* "the central legal issue" presented here is "whether putative class members are employees for purposes of the provisions under which they sue." (*Ayala, supra,* 59 Cal.4th at p. 530; see *Dynamex, supra,*230 Cal.App.4th at p. 725.) "If they are employees, [VIP] owes them various duties that it may not have fulfilled; if they are not, no liability can attach." (*Ayala,* at p. 530.)

Salazar alleges exotic dancers are covered either by Wage Order No. 5 or No. 10. Wage Order No. 5 applies to the public housekeeping industry, which is defined in part to mean "any industry, business, or establishment which provides meals, housing, or maintenance services whether operated as a primary business or when incidental to other operations in an establishment not covered by an industry order of the Commission, and includes, but is not limited to the following: [¶] (1) Restaurants, night clubs, taverns, bars, cocktail lounges, lunch counters, cafeterias, boarding houses, clubs, and all similar establishments where food in either solid or liquid form is prepared and served to be consumed on the premises. . . ." Wage Order No. 10 applies to the amusement and recreation industry, which is defined as "any industry, business, or establishment operated for the purpose of furnishing entertainment or recreation to the public, including but not limited to theaters, dance halls, bowling alleys, billiard parlors, skating rinks, riding academies, racetracks, amusement parks, athletic fields, swimming pools, gymnasiums, golf courses, tennis courts, carnivals, and wired music studios."

---

implementing the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999. (See Cal. Code Regs., tit. 8, §§ 11000-11170; *Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at p. 1026; *Martinez, supra,* 49 Cal.4th at p. 57.) The Legislature defunded the IWC in 2004; however, its wage orders remain in effect. (*Peabody v. Time Warner Cable, Inc.* (2014) 59 Cal.4th 662, 667, fn. 3.)

Both wage orders appear to apply to exotic dancers. Because each defines the employment relationship in the same terms, we do not distinguish between the two. Like all other wage orders, Wage Order Nos. 5 and 10 define the word "employ" as "to engage, suffer, or permit to work." (Cal. Code Regs., tit. 8, §§ 11050, subd. 2(E); 11100, subd. 2(E).) An employer is defined as any person "who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." (*Id.*, §§ 11050, subd. 2(H), 11100, subd. 2(G).) Parsing this same language in light of the IWC's statutory purposes, *Martinez* concluded that "[t]o employ, then, under the IWC's definition, has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." (*Martinez, supra,* 49 Cal.4th at p. 64.)[2]

*Martinez* involved a claim for overtime and other unpaid wages under Labor Code section 1194. As we explained in *Dynamex*, "[I]t is not inappropriate to rely on the common law standard to determine whether an employment relationship exists for purposes of liability under section 1194. However, *Martinez* recognized that limiting plaintiffs to that test in actions under section 1194 and 'ignoring the rest of the IWC's broad regulatory definition would substantially impair the commission's authority and the effectiveness of its wage orders.' [Citation.] . . . 'Were we to define employment exclusively according to the common law in civil actions for unpaid wages we would render the commission's definitions effectively meaningless.'" (*Dynamex, supra,* 230 Cal.App.4th at p. 729, quoting *Martinez, supra,* 49 Cal.4th at p. 65.)

---

[2]     Under Wage Order No. 5, the standard IWC definition of "employee"—
"'Employee' means any person employed by an employer"—is supplemented to include
"any lessee who is charged rent, or who pays rent for a chair, booth, or space; and [¶]
(1) Who does not use his or her own funds to purchase requisite supplies; and [¶]
(2) Who does not maintain an appointment book separate and distinct from that of the
establishment in which the space is located; and [¶] (3) Who does not have a business
license where applicable." (Cal. Code Regs., tit. 8, § 11050, subd. 2(F).)

6

There is no cause of action under Labor section 1194 in this case, but virtually all of Salazar's causes of action cite wage and hour violations within the scope of the pertinent wage orders. We concluded in *Dynamex*, if plaintiffs allege claims falling within the scope of an IWC wage order, the court must permit them to rely on any of the three prongs identified in *Martinez* to establish an employment relationship. (*Dynamex, supra,* 230 Cal.App.4th at pp. 728, 733; see also *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1146-1147 [remanding motion for class certification for lower court to consider whether plaintiffs were employees under *Martinez* or the common law test articulated in *Borello*; complaint alleged claims under provisions other than § 1194].) Because the trial court applied only the common law, reversal is required to permit the court to consider whether class certification is proper with respect to claims falling within the scope of an IWC wage order if the dancers are found to be employees under either of the first two prongs of *Martinez*.[3]

If the court concludes the dancers hired by VIP were employees under the IWC definitions contained in Wage Order Nos. 5 and 10, the court should reexamine whether common issues predominate in keeping with the analysis of *Ayala*. (See *Ayala, supra,* 59 Cal.4th at p. 528 [trial court should have focused on "differences in [the defendant's] right to exercise control," rather than "variations in how that right was exercised"]; *Dynamex, supra,* 230 Cal.App.4th at pp. 734-735 [remanding for reconsideration of class certification in light of *Martinez* and *Ayala*].) As to claims falling outside the scope of a pertinent wage order, the common law test for an employee relationship will control. (*Dynamex,* at p. 734.) For any such claims, the court should also reconsider whether certification is appropriate in light of *Ayala*.

---

[3]     We express no view on the quality of the evidence submitted to the court in support of the motion for class certification. Because the court erred as a matter of law in limiting Salazar to the common law test for an employment relationship, reversal is required. (See *Ayala, supra,* 59 Cal.4th at p. 530 ["[w]e review the trial court's actual reasons for granting or denying certification; if they are erroneous, we must reverse, whether or not other reasons not relied upon might have supported the ruling"].)

7

**DISPOSITION**

The order denying class certification is reversed.  The matter is remanded to the superior court for proceedings not inconsistent with this opinion.  Salazar is to recover her costs on appeal.


PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.