Filed 3/3/16  Fradenburg v. United Healthcare Ins. Co. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| LOUISE FRADENBURG,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY et al.,<br><br>  Defendants and Respondents. | 2d Civil No. B258404<br>(Super. Ct. No. 1401650)<br>(Santa Barbara County) |

Louise Fradenburg appeals the trial court's order denying her motion for class certification.  Fradenburg's health insurance plan covers medically necessary out-of-network mental health treatment.  It does not limit the number of treatment sessions and does not require preauthorization.  Her provider reviews treatment after a member claims more than 20 psychotherapy sessions in six months and then may limit further coverage to that which it determines is medically necessary.

Fradenburg contends this practice of concurrent review and prospective limitation is unlawful and discriminates against those with severe mental illnesses who require long-term treatment.  She contends her health care plan only permits retrospective review.

On behalf of herself and other similarly situated, Fradenburg seeks an injunction, restitution, and statutory damages for unfair business practices and violation

of the Unruh Civil Rights Act (the "Act). (Bus. & Prof. Code, § 17200 et seq.; Civ. Code, § 51.)

The trial court denied class certification. It found that the class is ascertainable but the claims are not suitable for class treatment because individual issues of medical necessity predominate over common issues of law or fact. We affirm.

BACKGROUND

*United's Coverage for Out-of-Network Mental Health Treatment*

Fradenburg is employed by the University of California and is insured under an Anthem Blue Cross PPO plan.[1] United Heathcare Insurance Company provides behavioral benefits under the plan, including outpatient mental health treatment. United Behavioral Health and U.S. Behavioral Health Plan, California administer the plan. We refer to the United entities collectively as "United."

The plan covers "clinically necessary" mental health treatment. Before 2009, the plan limited coverage for out -of-network mental health treatment to 20 sessions per year and imposed a penalty on members who did not obtain preauthorization. In 2009, United eliminated the visit limitation and the preauthorization requirement to comply with federal parity laws. (42 U.S.C. § 300gg-26; see also Health & Saf. Code, § 1374.72.) After 2009, medical necessity was the only limitation on United's coverage for out-of-network outpatient mental health treatment.

United's representative testified that, "with federal parity, the preauthorization, precertification processes went away, which basically left an unmanaged out-of-network benefit." United looked for ways to "mitigate parity effects." In an internal document, United expressed concern that "the discerning UC member will soon realize there's no penalty if the treatment is not preapproved." United decided to "strongly . . . encourage the member to call prior to entering into treatment," but "to be sure [it has not] crossed the line in terms of representing the benefit in a way that makes it

---

[1] Fradenburg was insured under this plan at all times relevant to the appeal. She changed plans in late 2011.

sound stricter than the . . . medical necessity [limitation]." United's revised materials informed members that benefits are not subject to preauthorization, but also advised members that "[t]he best way to ensure services will be covered is to call [United] in advance for preauthorization." (University of California, Behavioral Health Benefits for Anthem Blue Cross PPO Members, Insured by United Healthcare Insurance Co. (Jan. 1, 2011) p. 9.)

### The 20-Plus Algorithm

United initiated utilization reviews anytime a member's out-of-network mental health treatment exceeded 20 sessions in a six-month period. A "20-plus algorithm" automatically triggered these reviews. Previously, United used the algorithm to manage in-network care. The 20-plus algorithm results in concurrent review and, sometimes, a prospective decision that future treatment is not medically necessary or should be limited in frequency.

United's representative testified that application of the 20-plus algorithm to out-of-network care was designed to decrease the administrative burden of reviews by focusing on "outlier cases." Before the algorithm was implemented, United required out-of-network providers to submit treatment reports for all mental health treatment. After United implemented the algorithm, United did not require treatment reports for the first 20 sessions. The representative testified that "90 percent of all of our outpatient episodes of care are completed in less than 20 sessions . . . nationally." An internal document states that "80% of members completed out-of-network treatment within 20 sessions for our customer University of California."

### Coverage for Fradenburg's Treatment

In 2011, Fradenburg's plan provided: "Out -of-Network Outpatient Mental Health and Substance Abuse services are not subject to preauthorization, but must be clinically necessary to be covered and are subject to retrospective review." Fradenburg underwent mental health treatment for major depression with an out-of-network provider four times per week. United reimbursed her $200 per session. After 20 sessions in a six-

3.

month period, the 20-plus algorithm triggered a utilization review. United's representative determined that psychotherapy four times per week was no longer medically necessary. Thus, on September 26, 2011, United's representative notified Fradenburg that it would cover one session per month going forward, after a transitional month in which it would cover weekly sessions: "I have determined that coverage is available under your benefit plan for your continuing outpatient treatment at the reduced frequency of 1 time per week for 1 month then 1 time per month outpatient medication management . . . thereafter." Fradenburg does not challenge United's medical necessity determination.

United denied Fradenburg's subsequent claims for mental health care services on September 27, 28, 30, and thereafter. It explained: "This service has been determined to not be medically necessary." In response, Fradenburg changed health care plans. She declares that her new plan has a higher deductible and lower reimbursement rates.

*The Complaint*

In her first cause of action for unfair business practices (Bus. & Prof. Code, § 17200 et seq.), Fradenburg contends that United's practice of conducting concurrent reviews of ongoing treatment and imposing prospective limits on covered treatment is an unfair practice because it effectively requires preauthorization after the 20th session, in breach of the plan's terms. She also contends it violates California's parity laws by "imposing restrictions on benefits" for members with mental illness that it does not impose on members "with other kinds of illnesses."

In her second cause of action for discrimination in violation of the Act (Civ. Code, § 51), Fradenburg contends United's concurrent review practice intentionally discriminates against people with severe mental illnesses by placing "discriminatory restrictions . . . on their benefits." She contends the practice is "intended to give the . . . illusion of impartiality, but the outcome is already determined: deny outright, or at least severely and arbitrarily restrict, benefits for outpatient mental health treatment."

4.

Fradenburg alleges that United's reviewing doctors have "made up their minds" before they contact treating providers, they conduct reviews without contacting treating providers, and they "misapply[] inpatient clinical guidelines to deny outpatient treatments."

## *The Proposed Class*

Fradenburg sues on behalf of herself and others similarly situated. She seeks an injunction, restitution, and statutory damages of $4,000 for each violation of the Act. She defines the class as members "whose benefits for mental health care were insured or administered by [United], who sought benefits for outpatient mental health treatments, whose requests for benefits were subjected to concurrent reviews, and whose benefits for outpatient mental health treatments were subjected to prospective limits of any kind." She also defines a subclass of such members who have severe mental illnesses as listed in Health and Safety Code section 1374.72.

United offers evidence that each utilization review involves the unique clinical circumstances of the individual insured, and that the results of the reviews varied depending on medical necessity. In some cases, it determined that weekly treatment was necessary; in others it determined bi-weekly treatment was necessary; and in others it determined monthly or every third week was necessary. In some cases, United overturned its determination after a member appealed it. In some cases, it did not. Fradenburg points out that the review and appeal processes impose a burden on the insured and the treating provider.

## *The Certification Decision*

The trial court denied Fradenburg's motion for class certification. The court found that there is an ascertainable, numerous class with common interests. But it found the claims are not amenable to class treatment because individual issues of medical necessity predominate. It also found that Fradenburg did not introduce evidence comparing United's handling of claims for treatment of mental illness to treatment for other medical conditions.

5.

DISCUSSION

Code of Civil Procedure section 382 authorizes class actions "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court."  The trial court decides in its discretion whether a case is amenable to class treatment.  "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435.)  We review the trial court's determination for abuse of discretion.  (*Ibid.*)  We will not disturb a certification determination that is supported by substantial evidence unless the court used improper criteria or erroneous legal assumptions.  (*Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 530.)  We ignore any unstated reasons that might have supported the ruling.  (*Ibid*.)

The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members.  (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326.) "Community of interest" involves three factors:  (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.  (*Ibid.*)

The sole issue on appeal is whether there are predominant common questions of law or fact.  A court evaluating predominance "must determine whether the elements necessary to establish liability are susceptible of common proof or, if not, whether there are ways to manage effectively proof of any elements that may require individualized evidence."  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1024.)

State and federal parity laws require equivalent coverage for mental health treatment and treatment of other medical conditions.  (42 U.S.C. § 300gg-26; Health & Saf. Code, § 1374.72.)  California's parity legislation is based on findings that "[m]ost

6.

private health insurance policies provide coverage for mental illness at levels far below coverage for other physical illnesses."  (Stats. 1999, ch. 534, § 1, subd. (b)(2).)  "Limitations in coverage for mental illness in private insurance policies have resulted in inadequate treatment for persons with these illnesses."  (*Id.*, subd. (b)(3).)  "Inadequate treatment causes relapse and untold suffering for individuals with mental illness and their families."  (*Id.*, subd. (b)(4).)  Amici point out that people with severe mental illnesses frequently benefit from longer term care.

Visit limitations and preauthorization for mental health treatment may violate parity laws if such restrictions do not apply to treatment for other medical conditions.  (See 26 C.F.R. § 54.9812-1(c)(4)(iii), example 1 [preauthorization requirement can violate parity laws] & example 11 [visit limitations can violate parity laws].)  But California's parity law authorizes utilization reviews:  "Notwithstanding any other provision of law, in the provision of benefits required by this section, a health care service plan may utilize case management, network providers, utilization review techniques, prior authorization, copayments, or other cost sharing."  (Health & Saf. Code, § 1374.72, subd. (g)(3).)

Whether United violated the plan's terms and California's parity law depends upon whether each member was entitled to claimed medically necessary benefits.  Parity laws apply only to medically necessary treatment.  (Health & Saf. Code, § 1374.72, subd. (a) [health care plans must cover "medically necessary treatment of severe mental illnesses . . . under the same terms and conditions applied to other medical conditions"]; Cal. Code Regs., tit. 28, § 1300.74.72, subd. (a) [equivalent care is required "when medically necessary"].)   The plan covers only "clinically necessary" care.  And Fradenburg's claim that United discriminated against those with severe mental illnesses depends upon proof that members were denied "full benefits under [the] Plan."  Her counsel explained, "We aren't challenging the finding of medical necessity in this case. . . .  We dropped breach of contract so we did not have to challenge medical necessity."  The complaint does not seek compensatory or non-economic damages.

But the medical necessity issue is unavoidable. Even if Fradenburg could establish that concurrent review is prohibited under the plan, she could not succeed on either cause of action without proof that United denied medically necessary services as a result of that review. Each member will be required to litigate the necessity of their individual treatment in light of their diagnosis and unique clinical circumstances.

The predominance inquiry calls for weighing costs and benefits. (*Ayala v. Antelope Valley Newspapers, Inc.*, *supra*, 59 Cal.4th 522, 539.) The ultimate question is whether "'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.'" (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1021.) A class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery or as to the amount of his or her damages. (*Sav-On Drug Stores, Inc. v. Superior Court*, *supra*, 34 Cal.4th at p. 333.) On the other hand, "the community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the 'class judgment' determining issues common to the purported class." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459.) The trial court is in the best position to weigh the issues presented and determine whether they are amenable to class treatment. It did not abuse its discretion when it determined that individual issues of medical necessity predominate and may not be effectively managed in a class action.

This case is unlike *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 478, in which the appellate court reversed an order sustaining a demurrer without leave to amend a proposed class action. In *Arce*, the insurer categorically denied behavioral and speech therapy for autism, irrespective of medical necessity. In response to each claim, it asserted that the therapy was an excluded "non-health care service[]," "academic or educational intervention[]," or "custodial care." (*Id.*

at p. 480.)  The allegations presented a predominant common question because they "would not . . . require the trial court to evaluate whether therapies are 'medically necessary' for each member of the putative class."  (*Id.* at p. 488.)  Here, United denied coverage solely on the ground that the ongoing treatment for a particular member was not medically necessary.  The members' claims cannot be resolved without litigating that issue.

## DISPOSITION

The order is affirmed.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.



GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

9.

Donna Geck, Judge

Superior Court County of Santa Barbara

_____

Cohen McKeon LLP, Michael L. Cohen, Heather M. McKeon; Psych-Appeal, Inc., Meiram Bendat; Law Office of Lara M. Krieger, Lara M. Krieger for Plaintiff and Appellant.

Crowell & Moring LLP, J. Daniel Sharp, Jennifer Salzman Romano, for Defendants and Respondents.

Disability Rights California, Danieal Brzovi, Laura Reich; Mental Health Advocacy Services, Inc., Jim Preis, Nancy Shea for California Psychiatric Association; Project Return Peer Support Network; Mental Health Advocacy Services, Inc.; and Disability Rights California as Amici Curiae on behalf of Plaintiff and Appellant.