# IN THE SUPREME COURT OF CALIFORNIA

GERARDO VAZQUEZ et al.,
Plaintiffs and Appellants,

v.

JAN-PRO FRANCHISING INTERNATIONAL, INC.,
Defendant and Respondent.

S258191

Ninth Circuit
17-16096

Northern District of California
3:16-cv-05961-WHA

January 14, 2021

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Corrigan, Liu, Cuéllar, Kruger, Groban and Humes[*] concurred.

---

[*] Administrative Presiding Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

VAZQUEZ v. JAN-PRO FRANCHISING
INTERNATIONAL, INC.
S258191


Opinion of the Court by Cantil-Sakauye, C. J.


At the request of the United States Court of Appeals for the Ninth Circuit, we agreed to decide the following question of California law (see Cal. Rules of Court, rule 8.548): Does this court's decision in *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903 (*Dynamex*) apply retroactively?

For the reasons set forth below, we conclude that *Dynamex* does apply retroactively. In *Dynamex*, this court was faced with a question of first impression: What standard applies under California law in determining whether workers should be classified as employees or independent contractors for purposes of the obligations imposed by California's wage orders? In addressing that question, we concluded that under one of the definitions of "employ" set forth in all California wage orders — namely, to "suffer or permit to work" — any worker who performs work for a business is presumed to be an employee who falls within the protections afforded by a wage order. (*Dynamex*, *supra*, 4 Cal.5th at p. 916.) We further held that such a worker can properly be found to be "an independent contractor to whom a wage order does not apply only if the hiring entity establishes: (A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is

1

customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." (*Id.* at pp. 916–917.) This standard, also used in other jurisdictions to distinguish employees from independent contractors, is commonly referred to as the "ABC test." (*Id.* at p. 916.)

In concluding that the standard set forth in *Dynamex* applies retroactively — that is, to all cases not yet final as of the date our decision in *Dynamex* became final — we rely primarily on the fact that *Dynamex* addressed an issue of first impression. It did not change a settled rule on which the parties below had relied. No decision of this court prior to *Dynamex* had determined how the "suffer or permit to work" definition in California's wage orders should be applied in distinguishing employees from independent contractors. Particularly because we had not previously issued a definitive ruling on the issue addressed in *Dynamex*, we see no reason to depart from the general rule that judicial decisions are given retroactive effect.

Defendant Jan-Pro Franchising International, Inc. asserts that an exception to the general rule of retroactivity should be recognized here. Defendant maintains that, prior to the issuance of our decision in *Dynamex*, it reasonably believed that the question of whether a worker should be classified as an employee or independent contractor would be resolved under the standard set forth in this court's decision in *S.G. Borello & Sons v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*). *Borello* addressed whether farmworkers hired by a grower under a written "sharefarmer agreement" were independent contractors or employees for purposes of the workers' compensation statutes. (*Id.* at p. 345.) The *Borello* decision, however, did not address whether a worker should be

considered an employee or an independent contractor for purposes of the obligations imposed by a wage order. Indeed, twice in the last decade, we signaled that the test for determining whether a worker should be classified as an employee or independent contractor in the wage order context remained an open question. (*Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522 (*Ayala*); *Martinez v. Combs* (2010) 49 Cal.4th 35, 57–58 (*Martinez*).)

Defendant additionally contends that it could not have anticipated that the distinction between employees and independent contractors for purposes of the obligations imposed by a wage order would be governed by the ABC test that we adopted in *Dynamex*. But defendant's argument carries little weight when, as here, the underlying decision changes no settled rule. Moreover, public policy and fairness concerns, such as protecting workers and benefitting businesses that comply with the wage order obligations, favor retroactive application of *Dynamex*. Thus, we do not view the retroactive application of the ABC test to cases pending at the time *Dynamex* became final as improper or unfair.

Accordingly, in response to the question posed by the Ninth Circuit, we answer that this court's decision in *Dynamex* applies retroactively.

## I. *DYNAMEX*'S INTERPRETATION OF THE SUFFER OR PERMIT TO WORK DEFINITION IN WAGE ORDERS APPLIES RETROACTIVELY TO ALL NONFINAL CASES GOVERNED BY SIMILARLY WORDED WAGE ORDERS

As noted, the sole issue before this court is whether our decision in *Dynamex*, *supra*, 4 Cal.5th 903, applies retroactively.[1]

We begin with a brief summary of the *Dynamex* decision. In *Dynamex*, we faced the question regarding what standard applies in determining whether, for purposes of the obligations imposed by California's wage orders, a worker should be considered *an employee* who is covered and protected by the applicable wage order or, instead, *an independent contractor* to whom the wage order's obligations and protections do not apply.[2] As we explained in *Dynamex*, all currently applicable California wage orders, in defining the terms as used in the wage orders, define the term " 'employ' " in part to mean " 'suffer

---

[1]  Although the particular facts of the underlying federal litigation in this case arise from a franchising arrangement, the question of California law posed by the Ninth Circuit that we agreed to answer does not involve any inquiry into the general relationship or applicability of the *Dynamex* decision to franchise agreements or arrangements, and we do not address that subject.

[2]  California's wage orders were promulgated by the Industrial Welfare Commission (IWC), the state agency charged with fixing minimum wages, maximum hours of work, and conditions of labor for various industries. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026.) Although the Legislature defunded the IWC in 2004, its wage orders remain in full force and effect. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1102, fn. 4.)

or permit to work' " and define the term " ' "employee" ' " to mean " 'any person employed by an employer.' " (*Dynamex, supra,* 4 Cal.5th at p. 926; see *id.* at p. 926 fn. 9.) At the same time, we noted that the wage orders do not contain a definition of the term " 'independent contractor' " nor any "other provision that otherwise specifically addresses the potential distinction between workers who are employees covered by the terms of the wage order and workers who are independent contractors who are not entitled to the protections afforded by the wage order." (*Id.* at p. 926.)

After a lengthy review of prior relevant California decisions (*Dynamex, supra,* 4 Cal.5th at pp. 927–942), we described the variety of standards that "have been adopted in legislative enactments, administrative regulations, and court decisions as the means for distinguishing between those workers who should be considered employees and those who should be considered independent contractors." (*Id.* at p. 950 & fn. 20.) We explained that as early as 1937, the suffer or permit to work standard embodied in California's wage orders had been described "as 'the broadest definition' that has been devised for extending the coverage of a statute or regulation to the widest class of workers that reasonably fall within the reach of a social welfare statute." (*Id.* at p. 951.) We took note of a number of criticisms that had been advanced regarding several tests that rely upon a "multifactor, 'all the circumstances' standard" for distinguishing between employees and independent contractors. (*Id.* at p. 954; see *id.* at pp. 954–956.) Thus, in part to avoid these criticisms, we concluded in *Dynamex* that it is "most consistent with the history and purpose of the suffer or permit to work standard in California's wage orders . . . to interpret that standard as: (1) placing the burden on the hiring entity to

establish that the worker is an independent contractor who was not intended to be included within the wage order's coverage; and (2) requiring the hiring entity, in order to meet this burden, to establish *each* of the three factors embodied in the ABC test — namely  (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." (*Id.* at pp. 956–957, fn. omitted.)

Accordingly, this court's decision in *Dynamex* was based upon a determination concerning how the term "suffer or permit to work" in California wage orders should be interpreted for purposes of distinguishing between employees who are covered by the wage orders and independent contractors who are not protected by such orders.

The *Dynamex* decision constitutes an authoritative judicial interpretation of language — suffer or permit to work — that has long been included in California's wage orders to define the scope of the employment relationships governed by the wage orders.  Thus, under well-established jurisprudential principles, our interpretation of that language in *Dynamex* applies retroactively to all cases not yet final that were governed by wage orders containing that definition.  (See *Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978 (*Newman*) ["The general rule that judicial decisions are given retroactive effect is basic in our legal tradition"]; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24 (*Waller*) ["[T]he general rule [is] that judicial decisions are to be applied retroactively"].)  As the

United States Supreme Court observed in *Rivers v. Roadway Express, Inc.* (1994) 511 U.S. 298, 312–313: "A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." In *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 474, this court, after quoting the foregoing passage from *Rivers v. Roadway Express, Inc.*, observed: "This is why a judicial decision [interpreting a legislative measure] generally applies retroactively." (See *Woolsey v. State of California* (1992) 3 Cal.4th 758, 794 (*Woolsey*) [" 'Whenever a decision undertakes to vindicate the original meaning of an enactment, putting into effect the policy intended from its inception, retroactive application is essential to accomplish that aim' "].)

As past cases have explained, the rule affirming the retroactive effect of an authoritative judicial decision interpreting a legislative measure generally applies even when the statutory language in question previously had been given a different interpretation by a lower appellate court decision. Indeed, the United States Supreme Court's decision in *Rivers v. Roadway Express, Inc., supra*, 511 U.S. 298, quoted above, involved just such a circumstance. In that case, the high court held that its interpretation of a statutory term contained in the 1866 Civil Rights Act applied retroactively, notwithstanding the fact that a line of prior federal appellate court decisions had set forth a contrary interpretation.

California decisions apply this same rule. In *In re Retirement Cases* (2003) 110 Cal.App.4th 426, 441–454, for example, the Court of Appeal held that the California Supreme Court's interpretation of a term in a pension statute in *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997)

16 Cal.4th 483 applied retroactively, even though the *Ventura County* decision explicitly rejected an earlier contrary interpretation of the same statutory term by another appellate decision in *Guelfi v. Marin County Employees' Retirement Assn.* (1983) 145 Cal.App.3d 297. In *Woolsey*, *supra*, 3 Cal.4th 758, 794, we reaffirmed the principle that "[t]he circumstance that our decision overrules prior decisions of the Courts of Appeal does not in itself justify prospective application." We elaborated: "An example of a decision which does not establish a new rule of law is one in which we give effect 'to a statutory rule that courts had heretofore misconstrued [citation].' " (*Ibid.*) Such a decision applies retroactively, we concluded, because there is no material change in the law. (*Ibid.*)

*Dynamex* presented a question of first impression concerning how a wage order's suffer or permit to work standard should apply in the employee or independent contractor context. In resolving that issue, our decision in *Dynamex* did not overrule any prior California Supreme Court decision or disapprove any prior California Court of Appeal decision. Thus, the well-established general principle affirming the retroactive application of judicial decisions interpreting legislative measures supports the retroactive application of *Dynamex*.

## II.  NO EXCEPTION TO THE RETROACTIVITY OF *DYNAMEX* IS JUSTIFIED

Defendant argues that an exception to the general retroactivity principle should be applied here because, prior to *Dynamex*, businesses could not reasonably have anticipated that the ABC test would govern at the time when they classified workers as independent contractors rather than employees. Defendant relies on past cases noting that "narrow exceptions

to the general rule of retroactivity [have been recognized] when considerations of fairness and public policy are so compelling in a particular case that, on balance, they outweigh the considerations that underlie the basic rule." (*Newman, supra,* 48 Cal.3d at p. 983; see, e.g., *Williams & Fickett v. County of Fresno* (2017) 2 Cal.5th 1258, 1282; *Claxton v. Waters* (2004) 34 Cal.4th 367, 378–379.) This recognized exception arises " 'when a judicial decision changes a settled rule on which the parties below have relied.' " (*Claxton,* at p. 378; see also *Alvarado v. Dart Container Corp. of California* (2018) 5 Cal.4th 542, 572 (*Alvarado*) [same]; *Williams & Fickett,* at p. 1282 [same]; *Waller, supra,* 11 Cal.4th at p. 25 [judicial decision "clarif[ying]" the law applies retroactively].)

In support of its position, defendant initially contends that prior to *Dynamex,* it — assertedly like other California businesses — reasonably believed that the question of whether a worker should be considered an employee or an independent contractor would be determined by application of the standard set forth and applied in this court's decision in *Borello, supra,* 48 Cal.3d 341. Under these circumstances, defendant maintains that it would be unfair to apply the ABC standard adopted in the *Dynamex* decision, rather than the *Borello* standard, to nonfinal cases that predate the *Dynamex* decision. For the reasons discussed below, we disagree that an exception to the general rule of retroactivity is warranted on this theory.

To begin with, it is important to understand that California's wage orders have included the suffer or permit to work standard as one basis for defining who should be treated as an employee for purposes of the wage order for more than a century. (*Martinez, supra,* 49 Cal.4th at pp. 57–58.) Additionally, at least since the 1930s, the suffer or permit to

work standard has been understood as embodying " 'the broadest definition' " of employment for extending coverage of a social welfare statute. (*Dynamex*, *supra*, 4 Cal.5th at p. 951; see *id.* at pp. 950–951 [citing *United States v. Rosenwasser* (1945) 323 U.S. 360, 363, fn. 3, quoting language of then-Senator (later United States Supreme Court justice) Hugo L. Black in describing the incorporation of the suffer or permit to work standard in the federal Fair Labor Standards Act as adopted in 1937].)

Defendant contends that prior to *Dynamex*, a putative employer would have reasonably anticipated that the question whether a worker should properly be classified as an employee or independent contractor for purposes of the obligations imposed by an applicable wage order would be governed by the *Borello* decision. But, as noted above, *Borello* was not a wage order case and that decision did not purport to determine who should be interpreted to be an employee for purposes of a wage order. We resolved this question for the first time in *Dynamex*. "Because the relevant portion of [the opinion] did not address an area in which this court had previously issued a definitive decision, from the outset any reliance on the previous state of the law could not and should not have been viewed as firmly fixed as would have been the case had we previously spoken." (*Newman*, *supra*, 48 Cal.3d at pp. 986–987; see also *Alvarado*, *supra*, 4 Cal.5th at p. 573 [declining to limit holding to prospective application when "defendant cannot claim reasonable reliance on settled law"].) In *Newman*, we concluded that our decision applied retroactively "even if one views [it] as breaking new and unexpected ground, . . . [because] it did so in an indisputably unsettled area." (*Newman*, at p. 987.) Moreover, in two decisions following *Borello*, we expressly

declined to decide the question of what standard applies in determining whether workers should be classified as employees or independent contractors in the wage order context. In *Martinez*, decided eight years prior to *Dynamex*, this court addressed the question regarding what standard should be utilized in deciding whether an employment relationship existed between the plaintiff workers and defendant business entities for purposes of a potentially applicable wage order. Explaining that no prior case had directly addressed the proper interpretation of the relevant provisions of the wage order relating to the terms " 'employ' " and " 'employer,' " we explicitly held that the suffer or permit to work definition was one of three alternative bases upon which an employment relationship could be established for purposes of the obligations imposed by an applicable wage order. (*Martinez*, *supra*, 49 Cal.4th at pp. 50, 64.)

In *Martinez* itself, the controversy turned on whether, for purposes of the obligations imposed by the wage order, the plaintiff workers could properly be considered employees of business entities other than the workers' most direct or immediate employer. Thus, *Martinez* did not present the question of whether the workers were properly considered employees or, instead, independent contractors for purposes of the wage order. Yet we expressly signaled that this was an open question, emphasizing that we were "not decid[ing]" in *Martinez* whether "the decision in [*Borello*] has any relevance to wage claims." (*Martinez*, *supra*, 49 Cal.4th at p. 73.)

In *Ayala*, *supra*, 59 Cal.4th 522, a case decided four years prior to *Dynamex*, we explicitly noted that we had solicited supplemental briefing from the parties concerning the possible relevance of the tests for employee status set forth in the

applicable wage order in determining whether a worker was an employee or an independent contractor for purposes of the wage order. (*Id.* at p. 531.) Ultimately, our decision in *Ayala* did not reach the issue upon which we had solicited supplemental briefing, relying instead on the ground that in the trial court the plaintiff employees in *Ayala* had relied solely on the *Borello* standard, and we could resolve that case on that basis without considering the wage order definitions of employment. (*Ibid.*) Nonetheless, at the same time, our decision in *Ayala* explicitly stated that "we leave for another day the question of what application, if any, the wage order tests for employee status might have to wage and hour claims such as these" (*ibid.*) — namely, claims raising the question of whether workers should properly be considered employees or independent contractors for purposes of the obligations imposed by a wage order.

In light of these passages in *Martinez* and *Ayala,* employers were clearly on notice well before the *Dynamex* decision that, for purposes of the obligations imposed by a wage order, a worker's status as an employee or independent contractor might well depend on the suffer or permit to work prong of an applicable wage order — and that the law was not settled in this area. (See *Newman, supra,* 48 Cal.3d at p. 987 [explicit statements in previous decisions that this court was expressly declining to decide an issue demonstrated that the matter was "in flux" and "any reliance on the previous state of the law could not and should not have been viewed as firmly fixed"].) By "expressly declin[ing] to decide the issue, thereby reserving our ultimate judgment on the question for some later date," we " 'highlighted the fact that this question remained to be decided by this court.' " (*Id.* at p. 988, italics omitted.) Thus, defendant's reasonable reliance argument is unconvincing.

Further, although defendant maintains that in classifying its workers as independent contractors it reasonably relied on the *Borello* standard, as this court explained in *Dynamex*, one of the principal deficiencies of the *Borello* standard is its numerous factors that must be weighed and balanced — and such a standard effectively prevents employers and employees from determining in advance how that classification will be resolved. (*Dynamex, supra,* 4 Cal.5th at pp. 954–955.) Thus, as a practical matter, defendant overstates the degree to which declining to extend the *Borello* test to this context will impinge upon its reasonable expectations. It is worth noting in this regard that in *Borello* itself the agricultural workers were found to be employees rather than independent contractors even though the workers controlled the manner and details of their work, including the hours that they worked.[3] (*Id.* at p. 346.)

Defendant further argues that even if it should have reasonably anticipated that a worker's designation as an employee or independent contractor would depend upon the application of a wage order's suffer or permit to work definition, it could not reasonably have anticipated that in *Dynamex* this court would adopt the ABC test as the appropriate standard. We reject the contention that litigants must have foresight of the *exact* rule that a court ultimately adopts in order for it to have retroactive effect. And indeed, the ABC test articulated in

---

[3] Defendant also asserts that it relied on our decision in *Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474. *Patterson* addressed the propriety of imposing vicarious liability on a franchisor for a franchisee's wrongdoing, rather than the question of what standard applies in determining whether workers should be classified as employees or independent contractors for purposes of California's wage orders.

*Dynamex* was within the scope of what employers reasonably could have foreseen. Prior decisions of this court had certainly provided putative employers notice concerning the potential breadth of the suffer or permit to work language. In *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 585 (*Morillion*), this court noted that federal cases had interpreted that phrase to apply when a putative employer " 'knows or should have known' " that work is being performed on its behalf. (See *id.* at pp. 584–585.) And in describing the scope of the suffer or permit to work definition in *Martinez*, we stated that "[a] proprietor who knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having the power to do so." (*Martinez*, *supra*, 49 Cal.4th at p. 69.) Moreover, the three elements of the ABC test are prominent factors already listed in *Borello*, *supra*, 36 Cal.3d at page 351. Last, because *Dynamex* did not change a previously settled rule, any reliance by the parties on the previous state of the law is not particularly persuasive in our retroactivity determination. (*Newman*, *supra*, 48 Cal.3d at p. 986.) "At a minimum, litigants necessarily were aware that" the employee/independent contractor distinction in the applicable wage orders "was uncertain and yet to be definitively established." (*Id.* at p. 987.)

It also bears noting that in *Dynamex*, this court determined that "the suffer or permit to work definition is a term of art that cannot be interpreted literally in a manner that would encompass within the employee category the type of individual workers, like independent plumbers or electricians, who have traditionally been viewed as *genuine* independent contractors who are working only in their own independent

business." (*Dynamex*, *supra*, 4 Cal.5th at p. 916.) This was so, we explained, because applying a broad "knows or should have known" that work was being performed formulation in the employee/independent contractor context would treat true independent contractors as employees for purposes of the wage order, when they could not reasonably have been intended to be so treated. (*Id.* at pp. 948–950.) Accordingly, this court harmonized the legislative intent to adopt the broadest standard for determining who should be treated as an employee for purposes of the wage order with the recognition that there was no intention to bring classic independent contractors within the reach of the wage orders. It was in this context that the court in *Dynamex* concluded that it was appropriate to adopt the ABC test as the standard for determining whether a worker should properly be considered an employee or independent contractor. (*Id.* at pp. 956–964.) We did not depart sharply from the basic approach of *Borello*, even though a literal reading of the suffer or permit to work definition would have swept far more broadly. Thus, even if we were to give weight to defendant's reliance argument at this juncture, it bears repeating that the test we ultimately adopted in *Dynamex* drew on the factors articulated in *Borello* and was not beyond the bounds of what employers could reasonably have expected.

It is true that "we have long recognized the potential for allowing narrow exceptions to the general rule of retroactivity when considerations of fairness and public policy are so compelling in a particular case that, on balance, they outweigh the considerations that underlie the basic rule." (*Newman*, *supra*, 48 Cal.3d at p. 983.) In this case, however, fairness and policy considerations underlying our decision in *Dynamex favor* retroactive application. As we explained in *Dynamex*, the wage

orders' protections benefit workers by "enabl[ing] them to provide at least minimally for themselves and their families and to accord them a modicum of dignity and self-respect." (*Dynamex*, *supra*, 4 Cal.5th at p. 952.) The wage orders also benefit "those law-abiding businesses that comply with the obligations imposed by the wage orders, ensuring that such responsible companies are not hurt by unfair competition from competitor businesses that utilize substandard employment practices." (*Ibid.*) And, "the minimum employment standards imposed by wage orders are also for the benefit of the public at large, because if the wage orders' obligations are not fulfilled the public will often be left to assume responsibility for the ill effects to workers and their families resulting from substandard wages or unhealthy and unsafe working conditions." (*Id.* at p. 953.) Applying the interpretation of the suffer or permit to work definition adopted in *Dynamex* only prospectively would potentially deprive many workers of the intended protections of the wage orders to which they may have improperly been denied, as well as permit businesses to retain the unwarranted advantages of misclassification.[4] Last, because we have already applied our decision in *Dynamex* retroactively — to the *Dynamex* parties themselves — it would be unfair to withhold the benefit of that decision to other similarly situated litigants.

In sum, no "compelling and unusual circumstances justify[] departure from the general rule" of retroactivity. (*Newman*, *supra*, 48 Cal.3d at p. 983; *Waller*, *supra*, 11 Cal.4th

---

[4] Having concluded that our decision in *Dynamex* applies retroactively, and having found no reliance or fairness considerations weighing against the general rule that judicial decisions apply retroactively, we likewise reject defendant's related due process challenge to retroactive application.

at p. 25 [rejecting argument against retroactivity because law in question was "but a logical extension" of well-established principles].)  As we noted, *Borello* itself distinguished between an employee and an independent contractor "by focusing on the intended scope and purposes of the particular statutory provision or provisions at issue." (*Dynamex*, *supra*, 4 Cal.5th at p. 934.)  Given the longstanding definition of "employ" as to suffer or permit to work in California's wage orders, and the unsettled nature of its application in the employee/independent contractor context, we reject the contention that it is unfair to putative employers to apply the ABC standard to work settings that predate the *Dynamex* opinion.  Indeed, we have routinely applied our decisions interpreting wage orders retroactively, even when the parties did not anticipate the precise interpretation of such orders.  (See, e.g., *Frlekin v. Apple* (2020) 8 Cal.5th 1038, 1057; *Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 848, fn. 18.)

Given the constraints imposed by the statute of limitations, the retroactive application of *Dynamex* will in practice affect a limited number of cases.  Nonetheless, in light of the general rule of retroactivity of judicial decisions and the fundamental importance of the protections afforded by the wage orders, we find no compelling justification for denying workers included in such lawsuits the benefit of the standard set forth in *Dynamex*.

### III. CONCLUSION

In answer to the question posed by the Ninth Circuit, we conclude that our decision in *Dynamex* applies retroactively to all nonfinal cases that predate the effective date of the *Dynamex* decision.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR , J.**
**KRUGER, J.**
**GROBAN, J.**
**HUMES, J.**[*]

_____

[*] Administrative Presiding Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Vazquez v. Jan-Pro Franchising International, Inc.
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX on request pursuant to rule 8.548, Cal. Rules of Court
**Review Granted**
**Rehearing Granted**
_____

**Opinion No.** S258191
**Date Filed:** January 14, 2021
_____

**Court:**
**County:**
**Judge:**
_____

**Counsel:**

Lichten & Liss-Riordan and Shannon Liss-Riordan for Plaintiffs and Appellants.

Nayantara Mehta; Cynthia L. Rice, Verónica Meléndez; Jennifer Reisch; Carol Vigne; Ellyn Moscowitz; Rocio Alejandra Avila; and Jora Trang for National Employment Law Project, California Rural Legal Assistance Foundation, Equal Rights Advocates, Legal Aid at Work, Legal Aid of Marin, National Domestic Workers Alliance and Worksafe, Inc., as Amici Curiae on behalf of Plaintiffs and Appellants.

Olivier Schreiber & Chao, Monique Olivier; and Reynaldo Fuentes for California Employment Lawyers Association and Partnership for Working Families as Amici Curiae on behalf of Plaintiffs and Appellants.

O'Hagan Meyer, Jeffrey M. Rosin; Willenken, Jason H. Wilson, Eileen M. Ahern and Amelia L.B. Sargent for Defendant and Respondent.

Marron Lawyers, Paul Marron, Steven C. Rice and Paul B. Arenas for Taxicab Paratransit Association of California as Amicus Curiae on behalf of Defendant and Respondent.

Arnold & Porter Kaye Scholer, James F. Speyer and Vanessa C. Adriance for California Chamber of Commerce and the International Franchise Association as Amici Curiae on behalf of Defendant and Respondent.

Horvitz & Levy, Jeremy B. Rosen, Peder K. Batalden and Felix Shafir for Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Defendant and Respondent.

Paul Hastings, Paul Grossman and Paul W. Cane, Jr., for California Employment Law Council and Employers Group as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Jason H. Wilson
Willenken LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
(213) 955-9240